Nichols Wire & Steel Company (formerly Nichols Wire, Sheet and Hardware Company) v. Commissioner.
Nichols Wire & Steel Co. v. Commissioner
Docket No. 111438.
United States Tax Court
1943 Tax Ct. Memo LEXIS 396; 1 T.C.M. (CCH) 818; T.C.M. (RIA) 43143; March 22, 1943
*396 Dupuy G. Warrick, Esq., 1415 Commerce Bldg., Kansas City, Mo., for the petitioner. Angus R. Shannon, Jr., Esq., for the respondent. SMITH
Memorandum Opinion SMITH, Judge: The respondent has determined a deficiency of $6,815.04 in petitioner's income tax for the fiscal year ended June 30, 1940. The questions in issue are whether petitioner sustained a deductible loss or realized a taxable gain in 1940 upon the assignment to its principal stockholder and former president of certain policies of insurance on his life; and whether, if a loss, it was an ordinary loss or a capital loss. The facts are contained in a written stipulation of facts which we adopt as our findings of fact. [The Facts] Petitioner is a Missouri corporation, formerly known as Nichols, Wire, Sheet and Hardware Co., with its principal office in Kansas City. It filed its income tax return for the fiscal year ended June 30, 1940, with the collector of internal revenue for the sixth district of Missouri. In 1931 petitioner was put in equity receivership and G. V. Dryden was appointed receiver. Just prior to the receivership F. R. Nichols was its principal stockholder and president. On August 11, 1922, the Prudential *397 Life Insurance Company of America issued policy No. 4010535 on the life of F. R. Nichols, with a death benefit of $70,000. On August 10, 1919, and August 11, 1921, the same company issued policies Nos. 1516046 and 1835950, respectively, to F. R. Nichols on his life, with death benefits of $5,000 each. In September, 1932, Nichols assigned policies 1516946 and 1835950, among others, to the petitioner's receiver with the understanding that the receiver or petitioner would reassign the policies to him at any time upon his reimbursement of the receiver or petitioner for premiums and interest on policy loans paid subsequent to the assignment and prior to the reassignment. On May 16, 1936, a plan for reorganization of petitioner under section 77B of the Bankruptcy Act was approved by the United States District Court for the Western District of Missouri. The reorganization plan provided that petitioner's business should be continued by the trustee who had been appointed by the court to succeed the receiver, but no new corporation was formed. A final decree was entered by the court on August 27, 1941. Under the reorganization plan as later amended petitioner's common stockholders received *398 one share of no par value new common stock in exchange for one share of old common stock of a par value of $100. The new common stock was to be held in a voting trust for nine years, or until the debenture bonds and preferred stock should be retired. As a majority holder of the old common stock F. R. Nichols became the beneficial owner of a majority of petitioner's new common stock. Since the reorganization he has held no office in petitioner, although pursuant to the reorganization agreement he or his nominee has served as one of the ten directors. The right to elect the voting trustees who in turn elect the directors was vested in the holders of the debenture bonds until such bonds should be fully retired and then in the preferred stockholders until the preferred stock should be fully retired. There are still outstanding debenture bonds and the voting trust is still in existence. Section III of the reorganization plan provides that petitioner should "carry and maintain existing insurance upon the life of F. R. Nichols" of a net maturity value of not less than $200,000, which should be pledged to secure, first, the payment of any bank indebtedness of petitioner not to exceed $100,000; *399 second, the payment of the debenture bonds and interest thereon; and, third, the retirement of the preferred stock. The agreement further provided that F. R. Nichols should have the privilege at any time to have assigned to him 25 percent of the amount of such insurance policies upon assuming any indebtedness standing against such policies and, if request for the assignment should be made after three years from the date of the confirmation of the plan of reorganization, by reimbursing petitioner for all premiums and interest on policy loans paid by the petitioner on such policy after the expiration of such three-year period and prior to the request for the reassignment. In 1940 Nichols gave petitioner notice of his election to have assigned to him 25 percent of the insurance policies on his life then held by petitioner. The aggregate death benefits of such policies was $317,000. The amount which Nichols was entitled to have assigned to him under the agreement was therefore $79,250. Three policies with total death benefits of $80,000 were assigned to Nichols by the petitioner in May, 1940. These policies had a net cash surrender value of $9,453.12, computed as follows: Death
Gross
Net
Policy No.
Benefits
Cash Value
Loans
Cash Value
4010535
$70,000
$30,660
$22,349.55
$8,310.45
1835950
5,000
2,255
1,676.50
578.50
1516946
5,000
2,365
1,800.83
564.17
Total
$80,000
$35,280
$25,826.88
$9,453.12
*400 Net premiums were paid by petitioner on the policies as follows: Quarterly
Period for which
Net Prem. paid
Policy No.
Date
Premium
Petitioner paid Prem.
by Petitioner
4010535
8/11/22
$785.40
8/11/22 thru 8/11/39
In excess of
$35,280.00
1835950
8/11/21
53.70
8/11/32 thru 8/11/39
1,546.90
1516946
8/10/19
49.30
8/10/32 thru 8/10/39
1,203.20
None of the premiums paid by petitioner, as shown above, were deducted by the petitioner as a business expense. In consideration for the assignment of the policies Nichols agreed to pay, and did pay, petitioner the following amounts: (a) Reimbursement of premium costs
on $79,250 of all insurance from May
16, 1939 to August 11, 1940 in the sum
of
$3,447.15
(b) Interest on loans secured by
$79,250 of the above policies from May
16, 1939 to May 26, 1940 in the sum of
918.90
(c) The difference between the net
cash value of the policies described
above ($9,453.12) and twenty-five per
cent of the net cash value of all the poli-
cies on the life of F. R. Nichols, Sr.
($7,990.68) in the sum of
1,462.44
(d) The difference between the death
benefits provided by the specific policies
withdrawn ($80,000.00) and twenty-five
per cent of the death benefits provided
in all policies on the life of F. R. Nichols,
Sr. ($79,250) in the sum of
750.00
$6,578.49
*401 In its return for the fiscal year ended June 30, 1940, petitioner claimed a loss on the assignment of the three policies to Nichols of $31,224.27 as "Loss in life insurance premiums." In its petition in this proceeding the petitioner alleges that the respondent erred in disallowing the deduction of $9,453.12 "representing the loss of the cash surrender value" of the policies and in determining that it realized a taxable gain of $597.27, whereas only $72.19 of that sum is taxable. [Opinion] Petitioner now contends in its brief that the amount of its deductible loss is the net cash surrender value of the three policies, $9,453.12, less the $1,462.44 which it received from Nichols (item (c) above) as the difference between the net cash surrender value of the three policies and 25 percent of the net cash surrender value of all of the policies held by petitioner. The respondent determined in his deficiency notice that petitioner sustained no deductible loss on the assignment of the policies to Nichols but that it realized a taxable gain of $597.27 described in the deficiency notice as the amount of $750 cash which petitioner received from Nichols "from the disposition of a certain *402 interest in a life insurance policy" less "Cost" of $152.73. The respondent now contends in his brief that petitioner's loss on the transaction, if any, was not in excess of the cash surrender value of the policies assigned to Nichols at May 16, 1939 (three years after date of confirmation of the plan of reorganization) and that since that value is not shown by the evidence no loss deduction can be allowed. His basis for this contention is that petitioner was entitled to reimbursement for all premiums and interest paid on the policies after May 16, 1939. He further contends in his brief that petitioner's loss, if any, was a capital loss. He concedes that if his present theory is correct he erred in determining in his deficiency notice that petitioner realized a taxable gain of $597.27, since the total amount received from Nichols "should be used to reduce any loss sustained by petitioner upon the transfer of the policies." After respondent's brief was filed the parties submitted a supplemental stipulation in which it is stipulated that the cash surrender value of the three policies in question in May, 1939, was $33,440. Thereafter, respondent filed a reply brief which is directed *403 principally to the question of whether the transaction by which petitioner assigned the policies under consideration to Nichols was a "sale or exchange" within the meaning of section 117 (d) of the Internal Revenue Code. Petitioner also filed a reply brief to respondent's original brief which does little to clear up the state of confusion. As the record stands we are unable to determine just what contentions the parties are now relying upon. The allegations of error contained in the petition which respondent answers with a general denial are: (a) In determining the tax liability of the petitioner for the year ended June 30, 1940, the Commissioner erroneously disallowed the deduction of Nine Thousand Four Hundred Fifty-three and 12/100 Dollars ($9,453.12), representing the loss of the cash surrender value of three policies of life insurance owned by the petitioner until May 18, 1940. (b) In determining the said tax liability, the Commissioner erroneously computed the gain arising from a prepayment to the petitioner of death benefits under three policies of life insurance and erroneously held that the sum of Five Hundred Ninety-seven and 27/100 Dollars ($597.27) is taxable, whereas *404 only Seventy-two and 19/100 Dollars ($72.19) of that sum is taxable. As to the first allegation of error we think that the respondent correctly disallowed the deduction of any loss upon the assignment of the three policies in question to Nichols. Although it is not so stated in the stipulation, it appears to be a fact that the largest of the three policies, No. 4010535, for $70,000 was taken out by and issued directly to petitioner. The stipulation is that "On August 11, 1922, The Prudential Life Insurance Company of America issued Policy No. 4010535 on the life of F. R. Nichols, with a death benefit of $70,000." It is further stipulated that petitioner paid premiums on the policy in excess of $35,280. The other two policies, Nos. 1516946 and 1835950 for $5,000 each, were taken out by Nichols on August 10, 1919, and August 11, 1921, respectively, and were assigned by him to petitioner in September, 1932, along with other policies of an undisclosed amount. These policies were all assigned to petitioner with the understanding that Nichols might have them reassigned to himself at any time by reimbursing petitioner for the premiums and interest on policy loans which petitioner had paid *405 in the interim. Apparently Nichols had no such rights as to the $70,000 policy, at least up to the time of the adoption of the reorganization agreement. Under this agreement Nichols had the right at any time within three years to have assigned to him one-fourth of all the policies held by petitioner, including the $70,000 policy, merely by assuming any outstanding indebtedness against such policies. If the request for assignment of such one-fourth of the policies should be made after three years from the date of confirmation of the reorganization agreement, Nichols was to reimburse petitioner for any premiums or interest on loans on such policies paid after expiration of such three-year period and prior to assignment of the policies to Nichols. It is plain, we think, that after May 16, 1936, the date of confirmation of the reorganization agreement, petitioner held all of the policies of insurance on the life of Nichols, including the $70,000 policy which it had procured in 1922, subject to Nichols' right to have one-fourth of all the policies assigned to him in accordance with the terms of the agreement. Petitioner's interest in the policies must therefore be determined as of that *406 date, with full allowance for Nichols' interest in them. Petitioner did not enjoy all of the rights of full ownership in any of the policies. If upon the exercise of his option in 1940 Nichols had acquired no greater interest in the policies than was already vested in him under the reorganization agreement, that is, one-fourth of the total amount of the policies, and petitioner had given up nothing more than that, we do not see how any loss could have resulted to petitioner from the transaction. The only property of its own which petitioner parted with in the transaction was the excess of the total death benefits of the policies actually assigned to Nichols over his interest in the whole, that is, $750 of the policies. Obviously, petitioner received in the transaction considerably more than the cash surrender value of that amount of the policies over and above the amount Nichols was obligated under the reorganization agreement to pay petitioner for the assignment of the policies. The respondent has not determined that petitioner realized any gain on the transaction other than the $597.27 referred to above. In his brief the respondent states that: Included in the cash adjustments *407 paid by Nichols to petitioner on May 18, 1940, in consideration of the transfer to him of three life insurance policies, was an item of $750.00, which represents the difference between the death benefits provided by the specific policies withdrawn ($80,000.00) and twenty-five percent of the death benefits provided in all policies on the life of Nichols ($79,250.00). Respondent, in the notice of deficiency, determined that the excess of the total amount over the cost of the item to petitioner was taxable gain. It is respondent's theory that the total amount should be used to reduce any loss sustained by petitioner upon the transfer of the policies. If respondent's theory is correct, then it is conceded that the amount charged to petitioner as taxable gain is in error. * * * In view of this concession and in the absence of any affirmative pleading that petitioner realized any taxable gain on the assignment of the policies to Nichols, we hold that the transaction resulted in neither taxable gain nor deductible loss to petitioner. Decision will be entered under Rule 50.